**In the Matter of Earnestine H. BRYANT.**

**Bankruptcy No. T85–40077.**

United States Bankruptcy Court, N.D. Mississippi.

July 2, 1985.

Willie Griffin, McTeer and Bailey, Greenville, Miss., for Earnestine H. Bryant.

Betty Morgan Benton, Watkins, Ludlam and Stennis, Jackson, Miss., and James T. Milam, Campbell and Delong, Greenville, Miss., for Federal Nat. Mortgage Ass'n and Cameron-Brown Co.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

CAME ON for consideration the motion to set aside a foreclosure sale filed by Earnestine H. Bryant, hereinafter referred to as debtor; response to said motion filed by Cameron-Brown Company, hereinafter referred to as Cameron-Brown, and Federal National Mortgage Association, hereinafter referred to as FNMA; a motion seeking relief from the automatic stay filed by Cameron-Brown and FNMA; response to said motion filed by the debtor; all parties being represented by their respective attorneys of record; on proof before the Court; and the Court having heard and considered same, finds as follows, to-wit:

### I.

The Court has jurisdiction of the subject matter and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G) and (O).

### II.

The debtor owed an indebtedness initially to Cameron-Brown, secured by a deed of trust encumbering the debtor's principal place of residence, which had been assigned to FNMA. The debtor failed to timely pay the installments required under the terms of the indebtedness, so FNMA posted and published its intention to foreclose, the sale being scheduled on March 29, 1985, between legal hours, i.e., 11:00 a.m.–4:00 p.m.

On March 27, 1985, the debtor's attorney verbally advised the local attorney for FNMA, who was to actually conduct the foreclosure sale, that the debtor was filing this bankruptcy case. A Chapter 13 bankruptcy petition was then mailed to the Court and received in the Clerk's office on March 28, 1985, at 8:30 a.m. The bankruptcy petition was prepared on an outdated Form 1, in use prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, and did not contain the attorney's affidavit now required as Exhibit "B" to new Official Form No. 1 (see Rule 1002, Rules of Bankruptcy Procedure and Official Form No. 1), nor the Bankruptcy Clerk's affidavit required by 11 U.S.C. § 342(b). Because of these deficiencies, the intake deputy clerk stamped the petition "Tendered or Lodged for Filing" at 8:30 a.m., on March 28, 1985, and mailed a Pre-filing Deficiency Notice to the debtor's attorney, advising of the absence of the aforementioned affidavits.

Subsequent to the events described in the paragraph immediately preceding, FNMA conducted its foreclosure sale at 11:07 a.m. on March 29, 1985, and purchased the property for the sum of $29,065.75. A substituted trustee's deed was executed that same date purporting to convey the property to FNMA and was filed for record on April 1, 1985, in book 1546, page 737 of the land records of Washington County, Mississippi. Also on April 1, 1985, the debtor executed a declaration stating that she was aware of the alternative forms of bankruptcy relief available under Title 11, United States Code, and both the attorney's affidavit and the Clerk's affidavit were appended to the previously tendered petition.

In this proceeding, the debtor seeks to set aside the foreclosure sale as being in violation of the automatic stay set forth in 11 U.S.C. § 362(a). At the same time, FNMA contends that the debtor's failure to include the consumer language now required in new Official Form No. 1, as well

as, the absence of the attorney's affidavit and the Clerk's affidavit preclude the legitimate filing of this case and the resulting activation of the automatic stay prior to the foreclosure sale. FNMA further contends that the foreclosure was lawfully conducted and seeks relief from the stay in order to remove the debtor from the premises, which is alleged to be owned now by FNMA and no longer property of this bankruptcy estate.

### III.

In an over abundance of caution, when enacting the aforementioned Bankruptcy Amendments and Federal Judgeship Act of 1984, Congress provided three mechanisms to advise consumer debtors of the available forms of relief under Title 11 of the Bankruptcy Code. The first such mechanism appears in paragraph 6 of revised Official Form No. 1, as follows:

> 6. [If petitioner is an individual whose debts are primarily consumer debts.] Petitioner is aware that [he or she] may proceed under Chapter 7 or 13 of title 11, United States Code, understands the relief available under each such chapter, *and chooses to proceed under Chapter 7 of such title.* (emphasis added)

The last clause noted in paragraph 6, is particularly significant to this case in view of the fact that the debtor has not chosen to proceed under Chapter 7, but has chosen to proceed under Chapter 13.

The next mechanism is found in Exhibit "B" to revised Official Form No. 1 which is set forth as follows:

#### Exhibit "B"

> [If Petitioner is an individual whose debts are primarily consumer debts, this Exhibit "B" shall be completed and attached to the petition pursuant to paragraph (7) thereof.]
>
> I, ............... the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed un-

der chapter 7 or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

> Executed on ...............
>
> >Signature ................
> >Attorney for
> >Petitioner

The third mechanism appears in 11 U.S.C. § 342(b) which provides as follows:

> (b) *Prior to the commencement* of a case under this title by an individual whose debts are primarily consumer debts, the Clerk shall give *written notice* to such individual that indicates each chapter of this title under which such individual may proceed. (emphasis added)

The legislative comment under this section realistically sums up the actual purpose for all three of these mechanisms, to-wit: "The purpose of the provision is to apprise debtors that wish to repay their debts of the availability of Chapter 13 in case they were not apprised of its availability before filing a liquidation case."

### IV.

The literal language found in 11 U.S.C. § 342(b) is just one example of many shortcomings found in the substantive consumer bankruptcy amendments. Although I am certain there are a variety of creative approaches being developed across the country; what is the logical purpose of requiring that the Bankruptcy Clerk, in addition to the debtor's attorney, advise an individual consumer debtor of the available forms of relief in writing prior to the commencement of the bankruptcy case? In obvious haste to enact bankruptcy legislation in some fashion at the eleventh hour, the drafters have provided several discriminatory loop holes for the innovative litigant, and, at the same time, have inflicted meaningless requirements as obstacles to legitimate bankruptcy relief.[1] It seems appar-

---

1. For a few selected examples of inconsistencies in the consumer amendments, which are not all inclusive, consider the following:

ent from only a cursory review of the substantive consumer amendments that the ideas of the legislative drafters, having knowledge of practical bankruptcy processes, were disregarded in the compromises interwoven through this legislative exercise.

## V.

As noted hereinabove, the overall purpose of the three methodologies to advise individual consumer debtors was to encourage and promote Chapter 13 filings. These three mechanisms were not necessary in this case because the debtor did, in fact, file a Chapter 13 petition, seeking to repay her debts. Also, because of her chapter election, the requirements of Rule 1002, Rules of Bankruptcy Procedure, are met in that the debtor's petition does conform *substantially*, although not precisely, to Official Form No. 1. To hold that the filing of her petition at 8:30 a.m. on March 28, 1985, did not activate the automatic stay would be a decision placing form over substance. This is especially true in view of the uncontradicted fact that the debtor's attorney verbally notified local counsel for FNMA of the debtor's intention to file bankruptcy prior to the foreclosure sale.

Therefore, the Court finds that the foreclosure sale held by FNMA on March 29, 1985, was conducted in violation of the automatic stay as provided in 11 U.S.C. § 362(a), and as such, must be voided and set aside. Likewise, the substituted trustee's deed should be voided and cancelled of public record.

Since this is a case of first impression, the Court hastens to add that had this case been filed as a Chapter 7 liquidation the opposite conclusion could have been easily reached.

## VI.

In view of the conclusion reached hereinabove, the motion seeking relief from the automatic stay so that the debtor might be removed from her residence is hereby overruled with prejudice.

An Order will be entered consistent with this Opinion.

11 U.S.C. § 109(f), concerning debtor eligibility, is applicable specifically to an individual debtor; why not the same treatment for the corporate debtor that has willfully failed to abide by the Court's orders, etc., or has voluntarily dismissed when confronted with a motion seeking stay relief?

11 U.S.C. § 342(b), [discussed hereinabove] requires the Bankruptcy Clerk to notify debtors, whose debts are *primarily* consumer debts, in writing before the case is commenced, of the available forms of relief under Title 11 of the Bankruptcy Code. Although Official Form No. 1 requires notice and acknowledgement of only Chapter 7 and Chapter 13 relief, the Clerk must advise consumer debtors additionally of the availability of Chapter 11.

11 U.S.C. § 362(h), provides that, actual and punitive damages, including costs and attorney's fees, may be awarded to an *individual* debtor injured by a willful violation of the automatic stay. (11 U.S.C. § 362(a)) What happens to the corporate debtor under the same circumstances?

11 U.S.C. § 523(d), provides for the award of reasonable attorney's fees to a prevailing debtor who is successful in defending a complaint alleging non-dischargebility of a *consumer* debt. Although this identical language appeared in the code prior to the 1984 amendments, the section still refers exclusively to consumer obligations. Should not the onerous creditor in a business context also be liable for the same attorney's fees?

11 U.S.C. § 547(c)(7), which provides an exception to preference avoidance, applicable to transfers less than $600.00, in *individual consumer* cases, contains no safeguard to deter any number of insider transfers, less than the threshold amount, on the eve of bankruptcy.

11 U.S.C. § 707(b), provides that the Court on its own motion, and *not* at the request or suggestion (perish the thought) of a party in interest, may dismiss an *individual consumer* debtor's case if granting relief would constitute a substantial abuse of Chapter 7. Again, the corporate debtor slips through the protective web of the statutory language and the Court is postured as the creditors' advocate and/or the debtor's adversary.